# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| BUD LEE and CINDY LUNDMAN, | ) | |
| as next friend and as natural parents of | ) | |
| PATRICK LEE, deceased | ) | |
|     Plaintiff, | ) | Case No. 3:06-0108 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| THE METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE | ) | |
| AND DAVIDSON COUNTY, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM

Defendant Metropolitan Government of Nashville and Davidson County ("Metro") has

filed a Motion to Dismiss (Docket No. 95), to which the plaintiffs have responded (Docket No.

100), and Metro has replied (Docket No. 101), and defendant Chief Ronal Serpas has filed a

Motion for Judgment on the Pleadings (Docket No. 107), to which the plaintiffs have responded

(Docket No. 115), and defendant Serpas has replied (Docket No. 119).  For the reasons discussed

herein, defendant Metropolitan Government of Nashville and Davidson County's Motion to

Dismiss will be granted, and defendant Ronal Serpas' Motion for Judgment on the Pleadings will

be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff-decedent Patrick Lee died from brain death secondary to electrocution after he

was beaten, kicked, and electrically shocked with a Taser stun gun by several police officers just

1

outside of the Mercy Lounge in Nashville, Tennessee.[1]  Mr. Lee had been asked to leave the

Mercy Lounge, where he was attending a concert, because he had gotten too close to the stage.

Mr. Lee departed peacefully but, shortly thereafter, he was confronted by defendant Officer

Christopher Brooks and an unidentified male outside of the building.  Mr. Lee told Officer

Brooks that he had done nothing wrong.

The plaintiffs allege that, during his subsequent interaction with Officer Brooks, the

officer sprayed Mr. Lee with pepper spray twice.  Mr. Lee took off some of his clothes and

began to walk away, but was cornered by Officer Brooks and an unidentified male.  More police

officers arrived, including defendant Officers Jonathan Mays and Jamie Scruggs.  The officers

surrounded Mr. Lee, kicked and beat him, and struck him with batons.  In addition, one or more

of the officers electrically shocked Mr. Lee with a Taser approximately nineteen times.  Each

shock consisted of 50,000 volts of electricity and lasted from two to nine seconds.  The plaintiffs

allege that these Tasers were in the possession of Officer Mays and Officer Scruggs during the

altercation.

After receiving these blows and electric shocks, Mr. Lee developed difficulty breathing.

Later he became unresponsive and was taken to the emergency room at Vanderbilt University

Medical Center.  Mr. Lee was pronounced dead on September 24, 2005, and the cause of his

death was noted as brain death secondary to electrocution.

The plaintiffs allege that, nearly three months prior to Mr. Lee's electrocution, the

Nashville Metropolitan Police Department received a bulletin from defendant Taser

---

[1]Unless otherwise noted, the facts have been drawn from the plaintiffs' Amended
Complaint.  (Docket No. 53)

International, Inc., warning of potential dangers that could arise from the use of its devices. This bulletin contradicted prior information, in training brochures and promotional materials, that had previously been provided to Nashville police officers. The plaintiffs allege that, despite this bulletin, Nashville police officers continued to use Tasers in a dangerous manner in direct violation of the manufacturer's warning, and that defendant Metro was aware of the officers' conduct. In addition, the plaintiffs allege that Metro purchased the Tasers without proper research and investigation.

On February 10, 2006, this case was removed to this court (Docket No. 1), and on September 28, 2006, the plaintiffs filed an Amended Complaint alleging: (1) negligence against Taser International, Inc., (2) misrepresentation against Taser International, Inc., (3) breach of implied warranty against Taser International, Inc., (4) breach of express warranty against Taser International, Inc., (5) strict liability against Taser International, Inc., (6) the use of excessive force in violation of 42 U.S.C. § 1983 against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against all defendant police officers, (7) a pattern and practice claim under 42 U.S.C. § 1983 against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against all defendant police officers, (8) violation of the Fourth Amendment under 42 U.S.C. § 1983 against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against all defendant police officers, (9) a negligence claim against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against all defendant police officers, (10) a battery claim against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against all defendant police officers, and (11) violation of the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-21-101 *et. seq.*,

3

against Metro, Chief of Police Ronal Serpas in his individual and official capacity, and against

all defendant police officers.  (Docket No. 53)

On July 30, 2007, defendant Metro filed a motion to dismiss the plaintiffs' state law

claims for negligence and violation of the TGTLA, and to dismiss the plaintiffs' excessive force

claim, and on September 13, 2007, defendant Ronal Serpas filed a motion for judgment on the

pleadings on the plaintiffs' § 1983 claims, and the claims for negligence and battery.

## ANALYSIS

### I.       Motion to Dismiss Standard

The court will first address Metro's motion to dismiss.  In deciding a motion to dismiss

for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the

plaintiffs have pleaded them.  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002);

*Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998).  The

Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court must

determine only whether "the claimant is entitled to offer evidence to support the claims," not

whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "Indeed it may

appear on the face of the pleadings that recovery is very remote and unlikely but that is not the

test."  *Scheuer*, 416 U.S. at 236.  Rather, challenges to the merits of a plaintiff's claim should be

"dealt with through summary judgment under Rule 56."  *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007), the

4

Supreme Court readdressed the pleading requirements under the federal rules.  The Court

stressed that, although a complaint need not plead "detailed factual allegations," those

allegations "must be enough to raise a right to relief above the speculative level."  *Id.* at 1964-65.

"The factual allegations, assumed to be true, must do more than create speculation or suspicion

of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United*

*Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at \*6 (6th Cir. Aug.

28, 2007) (citing *Twombly*, 127 S.Ct. at 1965).  Further, the Court observed that Federal Rule of

Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that

this substantive threshold is not achieved by conclusory assertions.  *Twombly*, 127 S.Ct. at 1965

n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice

pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a

right to relief above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508

n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . .

dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S.

at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote

and unlikely").  With this standard in mind, the court turns to an analysis of Metro's motion to

dismiss.

## II.     The Plaintiffs' Excessive Force Claim

Defendant Metro alleges that count six of the complaint does not allege a valid claim against Metro because it does not include a sufficient connection between Metro and the harm alleged.  Metro is correct, and this count must be dismissed as to Metro.

It is "firmly established that a municipality . . . cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents."  *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978)).  Under *Monell* and its progeny, "county liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the county."  *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).  A municipality may be held liable "only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury,'" *id.* (citing *Monell*, 436 U.S. at 694), and when there is "an 'affirmative link between the policy and the particular constitutional violation alleged," *id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Bennett v. City of Eastpointe*, 410 F.3d 810, 818-19 (6th Cir. 2005).

In other words, "[f]or liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort."  *Id.*  This requirement ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be" imputed to the municipality.  *Id.*  In addition, "an act performed pursuant to a 'custom' that has not been

6

formally approved by an appropriate decision[-]maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law;" *Board of County Com'rs of Bryan County, Okl., v. Brown*, 520 U.S. 397, 404 (1997); however, "[a] custom . . . must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996).

Count six, which is labeled "Excessive Use of Force," states that the beatings and electrocution suffered by Mr. Lee constituted unreasonable excessive force and abuse of process, and that this violation deprived Mr. Lee of his freedom and life. (Docket No. 53 at ¶ 67, 68). It does not provide any factual basis to connect these violations to Metro and, therefore, the only basis that could be surmised would be under a *respondeat superior* theory, which is not permitted for § 1983 claims. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior.").

The plaintiffs allege that, because count six includes the language "Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-66 as if fully set forth herein" (Docket No. 53 at p. 14), this count incorporates a sufficient *Monell* claim by reference. The incorporated paragraphs do include factual allegations that could underpin a *Monell* claim. However, the problem with the plaintiffs' argument is that the *Monell* claim is stated more explicitly in count seven. Count seven, which is labeled "Municipal Violations" states that Metro "permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal uses of force, beatings, and use of weapons against civilians by police officers of the Nashville Metropolitan Police Department," and that Metro "failed to maintain a proper system for investigation of all incidents of unjustified beatings, shootings and excessive use of force by police officers," among other

7

allegations.  (Docket No. 53 at ¶ 69-70)  These allegations meet the pleading standards for a §
1983 claim against a municipality.

The plaintiffs have stated a proper *Monell* claim against Metro in count seven.  It has not,
however, stated those allegations in count six.  The plaintiffs cannot recover twice for the same
claim, and the court can see no basis for including Metro as a defendant under count six if the
basis for that inclusion is more explicitly stated in count seven.  Accordingly, Metro will be
dismissed from count six.

### III.     The Plaintiffs' State Law Claims

The plaintiffs have alleged three claims under Tennessee law.  Those claims are for
battery, negligence, and violation of the TGTLA.  By including defendant Metro as a defendant
for each of these claims, the plaintiffs seem to have misunderstood the way the TGTLA operates
as to common law claims against municipalities in Tennessee.

Sovereign immunity protects state entities from suit.  *See Seminole Tribe of Florida v.
Florida*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction
over suits against unconsenting States 'was not contemplated by the Constitution when
establishing the judicial power of the United States.'") (quoting *Hans v. Louisiana*, 134 U.S. 1,
15 (1890)).  The TGTLA lifts this immunity for certain state causes of action enumerated in that
act.  T.C.A. § 29-20-201(a) ("Except as may be otherwise provided in this chapter, all
governmental entities shall be immune from suit for any injury which may result from the
activities of such governmental entities wherein such governmental entities are engaged in the
exercise and discharge of any of their functions, governmental or proprietary.").  Accordingly,
any state causes of action the plaintiffs may pursue against Metro fall under the purview of the

8

TGTLA.

The TGTLA does provide an avenue for common law claims of negligence and battery in Tennessee courts. *See* T.C.A. § 29-20-205 (waiving immunity from suit for personal injury claims arising from injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment," unless the injury arises under several enumerated exceptions); *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 79-85 (analyzing TGTLA claims for negligence and battery). However, this court typically does not exercise jurisdiction over those claims. That is because the TGTLA has explicitly directed that jurisdiction over those claims is limited to the Tennessee courts. *See* T.C.A. § 29-20-307.

District courts may decline to exercise supplemental jurisdiction over a claim "if . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The compelling reason for declining jurisdiction in the case at hand is the TGTLA, which applies to the negligence claim against Metropolitan Government[2] and provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter." T.C.A. § 29-20-307.

This court has held that § 29-20-307 provides a basis for denying supplemental jurisdiction over state law claims in similar cases, *see, e.g., Beddingfield v. City of Pulaski, Tennessee*, 666 F. Supp. 1064, 1067 (M.D. Tenn. 1987) ("[A]s a matter of judicial power pendent jurisdiction probably cannot stand in the face of the limitations upon suability specified

---

[2]The TGTLA "addresses the liability of governmental entities only," and, therefore, does not apply to individually named municipal employees. *Timberlake v. Benton*, 786 F. Supp. 676, 697 (M.D. Tenn. 1992) (holding that the TGTLA's jurisdictional limitations "do not apply to persons sued individually"). Accordingly, the state law claims against individual defendants, to the extent that they survive this opinion, may remain in this court.

9

in . . . § 29-20-307."); *Spurlock v. Whitley*, 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997) ("[T]he

exclusivity provision of the TGTLA provides a compelling reason for this Court to decline

supplemental jurisdiction of the TGTLA claim in this case"), and the Sixth Circuit has held that

it was not error for a district court to do so. *See Gregory*, 220 F.3d at 446 ("[T]he Tennessee

legislature expressed a clear preference that TGTLA claims be handled by its own state courts.").

The TGTLA's exclusivity provision is an exceptional circumstance, providing ample reason for

the court to decline supplemental jurisdiction over the negligence claim[3]. *Spurlock*, 971 F. Supp.

at 1185; *see also Timberlake*, 786 F. Supp. at 696 (finding that the TGTLA "appears to place

exclusive original jurisdiction for claims arising under it with the state courts"). Accordingly,

the court will dismiss the plaintiffs' claims for battery[4], negligence, and for violation of the

TGTLA against defendant Metro.

**IV.    Judgment On The Pleadings Standard**

The court will next address Ronal Serpas's motion for judgment on the pleadings. A

motion for judgment on the pleadings pursuant to Rule 12(c) "should not be granted unless it

appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that

would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80

(1957). *See also Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998) ("The standard of review

applicable to a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion.") (citation

---

[3]The fact that the TGTLA mandates a bench trial on that claim provides an additional, practical reason to separate it from the other claims in this case, which will be tried to a jury.

[4]Although defendant Metro has not moved to dismiss the plaintiffs' battery claim, this fact does not affect the court's analysis as to whether supplemental jurisdiction should be exercised over that claim. Assuming that the plaintiffs do have a valid battery claim against Metro under the TGTLA, that claim should be adjudicated in state court.

10

omitted). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion for judgment on the pleadings is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). The merits of the claims set forth in the complaint are not at issue on a motion for judgment on the pleadings. Consequently, a complaint will be dismissed pursuant to Rule 12(c) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir.1978); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) (citations omitted).

## V.     The Plaintiffs' § 1983 Claims

The plaintiffs have included Chief Serpas as a defendant for all three of their § 1983 claims in his individual and official capacities. A claim against a municipal officer in his official capacity is no different from a claim against the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."). The municipality in question, Metro, has also been named as a defendant for all of the § 1983 claims. Accordingly, there is no basis for inclusion of Chief Serpas in his official capacity for those same claims. Chief Serpas, in his official capacity, will

11

be dismissed from all three § 1983 claims.

In his individual capacity, Chief Serpas can be held liable for § 1983 claims arising from deprivations that he did not, himself, commit; however, "liability of supervisory personnel must be based on more than the right to control employees." *Bellamy*, 729 F.2d at 421. The Sixth Circuit has explained that "[w]ithout more, such a theory would allow liability on a *respondeat superior* basis—a basis expressly rejected by the Supreme court in *Monell*." *Hays v. Jefferson County, Ky*, 668 F.2d 869, 872 (6th Cir. 1982). Instead, personal liability requires "some proof that a defendant has a culpable state of mind—that the action or failure to act was to some degree deliberate rather than inadvertent." *Id*. Accordingly, in *Hays v. Jefferson*, the Sixth Circuit propounded the following test, to which it has adhered since:

> A failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum*, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Id*. at 874 (emphasis added); *see also Bellamy*, 729 F.2d at 421; *Petty*, 478 F.3d at 349; *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005); *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (holding that, for liability to attach, the plaintiff "must show that [the defendant] . . . encouraged or condoned" the conduct at issue, and that a genuine issue of material fact existed as to that question)).

It is not obvious from *Hays* whether the Sixth Circuit absolutely requires that the

12

offending supervisor be present or somehow have specific knowledge of the incident in question as it is occurring, or whether it presents two alternatives, the first being such direct knowledge, and the second, "that the official . . . implicitly authorized, approved, or knowingly acquiesced" in the deprivation. *Id.* The plaintiffs allege that Chief Serpas knew about the safety issues inherent in the Tasers and also knew that his police officers engaged in illegal beatings and the use of weapons against civilians and yet did not stop them, but instead tolerated and encouraged such actions. The plaintiffs do not, however, allege that Chief Serpas knew about the specific beating in this case as it was happening. These allegations are sufficient to meet the "implicitly authorized, approved, or knowingly acquiesced" requirement, but not the "encouraged . . . or directly participated in" the "specific incident" requirement. Accordingly, the viability of the plaintiffs' § 1983 claim against Chief Serpas depends on whether the two requirements operate in tandem, or whether each provides an independent basis for liability.

Construction of the language lends some weight to the contention that the Sixth Circuit allows either (1) direct encouragement or participation in the specific incident or (2) implicit authorization, approval, or acquiescence in the underlying pattern of conduct. First, the second sentence is not an elaboration of the first sentence; it instead provides for a different basis of liability. There is no signal—such as the use of an "and"—indicating that both requirements must be met. Finally, there is the use of the phrase "at minimum." The use of this phrase seems to indicate that, although the second basis for relief is broader than the first—and that some conduct would meet the second requirement but not the first—it nevertheless creates a floor, or minimum requirement that can be met in order to hold a supervisory employee liable. This construction also best realizes the reasoning of the *Hays* court that liability should require "some

13

proof that a defendant has a culpable state of mind." *Id*. at 873. Each requirement independently requires a culpable *mens rea*: the first, knowledge of the specific incident, and the second, authorization, approval, or acquiescence of the underlying pattern of conduct.

In *DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 429-30 (6th Cir. 2006), the Sixth Circuit cited only the second part of the *Hays* standard, holding that "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." (quoting *Turner*, 412 F.3d at 643 (emphasis omitted)). The Court found that the plaintiff had not met this standard because no underlying constitutional violation existed. *Id*. In support of its shortened version of the *Hays* standard, the *DeMerrell* court also cited authority from the Third Circuit and from the First Circuit indicating that liability can exist in cases where the defendant officer did not know about the specific conduct at issue but did tolerate a general practice of unconstitutional conduct. *See A.M. v. Lexerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (holding that "[t]here are two theories of supervisory liability that are applicable," one of which being whether the defendants "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988) ("[A] plaintiff [can] establish causation by showing a 'pattern of police violence so striking as to allow an inference of supervisory encouragement, condonation, or even acquiescence,' . . . or by showing 'gross negligence . . . amounting to deliberate indifference.'") (quoting *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir. 1985)). *DeMerrell* points strongly in favor of the contention that the *Hays* standard provides two distinct avenues for supervisory liability. *C.f. Walker v.*

14

*Norris*, 917 F.2d 1449, 1455-56 (6th Cir. 1990) (recognizing supervisory liability for failure to train under the "deliberate indifference" standard in a § 1983 action asserting Eighth Amendment violations).

Further support can be found in the Sixth Circuit's opinion in *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). In *Leach*, there was "no claim . . . that the Sheriff directly participated in or encouraged the alleged deprivations;" however, there was "at least some evidence that the Sheriff 'implicitly authorized, approved, or knowingly acquiesced' in the action of the responsible jail personnel." *Id*. Specifically, this evidence consisted of a showing that the deprivation "was not isolated or confined to plaintiff Leach and that [the defendant] failed subsequently to punish the responsible individuals." *Id*. The Sixth Circuit noted that "[c]ourts are not required to ignore the fact of life that policies can be and often are subtly but effectively promulgated by seemingly benign conduct." *Id*.; *see also Gibson v. City of Clarksville, Tenn.*, 860 F. Supp. 450, 463 (M.D. Tenn. 1993) ("When the supervisor has actual notice of unlawful conduct towards the prisoner, the supervisor may be held liable for failure to protect the prisoner under the theory that the supervisor ratified such unlawful conduct.") *Leach* stands for the position that a supervisor need not have directly participated in a deprivation in order to be held liable under § 1983.

In fact, the majority of Circuits have adopted the rule that either direct participation or implicit authorization of a policy or practice are sufficient to establish supervisory liability over a constitutional deprivation. In *Al-Jundi v. Estate of Rockefeller*, for instance, the Second Circuit held that "direct participation is not always necessary," and, instead, that "a supervisory official may be personally liable if he or she has 'actual or constructive notice of unconstitutional

15

practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." 885

F.2d 1060, 1066 (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1040 (2d Cir. 1989)).

Similarly, the Fifth Circuit has recently held that "[a] supervisory official may be held liable

under § 1983 if he 'affirmatively participate[s] in acts that cause constitutional deprivation' or

'implement[s] unconstitutional policies that causally result in plaintiff's injury.'" *Lentworth v.*

*Potter*, No. 06-10983, 2007 WL 4183778 at *2 (5th Cir. Nov. 28, 2007) (quoting *Baker v.*

*Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). Finally, in *Meade v. Grubbs*, citing the Sixth Circuit's

*Hays* opinion, the Tenth Circuit held that "A supervisor or municipality may be held liable where

there is essentially a complete failure to train, or training that is so reckless or grossly negligent

that future misconduct is almost inevitable." 841 F.2d 1512, 1520; *see also Minotti v. City of*

*Seattle*, 409 F.3d 1113, 1149 ("Supervisory liability is imposed against a supervisory official in

his individual capacity for his own culpable action or inaction in the training, supervision, or

control of his subordinates, for his acquiescence in the constitutional deprivations of which the

complaint is made, or for conduct that showed a reckless or callous indifference to the rights of

others.") (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); *Braddy v.*

*Florida Department of Labor and Employment Security*, 133 F.3d 797, 802 (11th Cir. 1998)

(holding that supervisory liability can attach "when a history of widespread abuse puts the

responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails

to do so"). In light of the Sixth Circuit's language in *DeMerrell* and its holding in *Leach*, and in

light of the most straightforward interpretation of the language in *Hays*, the court believes that it

is also the law in this Circuit that supervisory liability can be conditioned either on direct

participation or implicit authorization.

16

Accordingly, the court finds that the plaintiffs have pled a viable § 1983 claim for supervisory liability against Chief Serpas. As with defendant Metro, however, that claim is fully stated in count seven, and there is no basis for including Chief Serpas in count six, which merely includes allegations of the underlying constitutional deprivation. As with Metro, even if the court were to include additional allegations in construing count six, it would merely state a claim that is duplicated in count seven. In short, the plaintiffs' § 1983 claim against Chief Serpas is only one claim. Accordingly, count six against Chief Serpas in his individual capacity will be dismissed.

There remains the issue of count eight, which also names Chief Serpas in his individual capacity under § 1983, but appears to identify, for the first time, the constitutional provisions underpinning that claim. The court will construe count eight and count seven together as stating a valid § 1983 claim against Chief Serpas in his individual capacity.

## VI.     The Plaintiffs' State Law Claims

The plaintiffs have conceded that their battery claim against Chief Serpas should be dismissed. They do not, however, concede that the negligence claim should be dismissed. Chief Serpas points out that, in his individual capacity, he is immune from negligence claims under T.C.A. § 29-20-310(b), which provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner." Because, as discussed above, the TGTLA *does* remove liability for negligence claims, it additionally provides immunity to Chief Serpas as to those claims.

In an attempt to circumvent this grant of immunity, the plaintiffs argue that § 29-20-

17

310(b) only applies if the employee was acting in the course and scope of his employment. Indeed, § 29-20-310(a) does provide that, in order to be granted immunity, an employee was to have "acted within the scope of [his or her] employment." However, the Amended Complaint nowhere alleges that Chief Serpas was not acting within the scope of his employment when he took or refrained from taking the actions that are relevant to this case. In fact, the Amended Complaint alleges that Chief Serpas "was the chief policymaker for the Nashville Metropolitan Police Department" and that, "[w]hile acting in this capacity, Chief Serpas, acting under color of law, violated the state and federal rights of the Plaintiff." (Docket No. 53 at ¶ 9). The negligence claim itself merely states the following with regard to Chief Serpas: "Chief Ronal Serpas failed to develop and implement adequate policies to establish appropriate handling . . . of persons similarly situated as Patrick Lee." (*Id*. at ¶ 86) Under the heading for count eleven, the TGTLA claim, the plaintiffs state that, "at all times pertinent to this action, the Defendant Police Officers and other employees of the Metropolitan government of Nashville Davidson County were acting within the course and scope of their employment." (*Id*. at ¶ 92)

These allegations and, indeed, the entire Amended Complaint, refer to Chief Serpas only through actions he performed, or failed to perform, within the scope of his employment. The Amended Complaint provides no basis for circumventing the immunity provided to Chief Serpas by § 29-20-310(a) on the basis that Chief Serpas committed any tortious act outside of the scope of his employment. Both the battery claim and the negligence claim against Chief Serpas must be dismissed.[5]

_____

[5]To the extent that the Amended Complaint attempts to name Chief Serpas in his official capacity as a defendant to the state law claims, the claims against him in that capacity must be dismissed as well. A claim against Chief Serpas in his official capacity, being identical to a

18

## CONCLUSION

For the reasons stated herein, defendant Metropolitan Government of Nashville and Davidson County's motion to dismiss will be granted, and defendant Ronal Serpas' motion for judgment on the pleadings will be granted in part and denied in part.

An appropriate order will enter.

 

_____
ALETA A. TRAUGER
United States District Judge

---

claim against Metro, would fall under the TGTLA and, accordingly, the court would decline supplemental jurisdiction over it. *See Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding that suits against state employees in their official capacities are deemed to be suits against the State itself).

19