IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BUD LEE and CINDY LUNDMAN, as )
next friend and as natural parents of )
Patrick Lee, deceased )
 )
v. )
 ) No. 3-06-0108
METROPOLITAN GOVERNMENT OF )
NASHVILLE/DAVIDSON COUNTY, )
TENNESSEE; RONAL SERPAS, )
individually and in his official capacity )
POLICE OFFICER JONATHAN )
MAYS; POLICE OFFICER JAMIE )
SCRUGGS; POLICE OFFICER )
CHRISTOPHER BROOKS; POLICE )
OFFICER JASON CREGAN; POLICE )
OFFICER PAUL SMITH; SERGEANT )
JUSTIN PINKELTON; POLICE )
OFFICER SHARRAFF MALLERY; )
POLICE OFFICER JOHN WRIGHT; )
POLICE OFFICER RYAN SCOTT; )
POLICE OFFICER WAYNE FISHER, )
individually and in their official )
capacities; and TASER )
INTERNATIONAL, INC. )

O R D E R

Pending before the Court is the motion of defendant Pinkelton to compel (Docket Entry No. 126). Defendant Justin Pinkelton served the plaintiffs a set of interrogatories related to both him and defendant Jonathan Mays. As provided herein, the motion is substantially GRANTED, as provided herein.

The defendant seeks to compel the plaintiff to respond to Interrogatories Nos. 1 and 2, and the subparts contained therein.

In Interrogatory No. 1(a), defendant Pinkelton seeks a description:

> . . . in detail [of] all acts or omissions by [defendant Pinkelton] that [the plaintiffs] say amounted to violations of Patrick Lee's constitutional rights, and "identify" every
>
> person who has knowledge of the information requested.

The use of the word "identify" apparently is an attempt to refer to the introductory portion of the interrogatories in which the defendant seeks the full name, street address, and telephone number of each person "identified." In his reply, the defendant quotes the relevant introductory portion of the interrogatories. See Docket Entry No. 138, at 1 n.1.

The plaintiff initially responded that it was "expected" that the police officer defendants, "eye witnesses previously identified," and the EMTs on the scene had knowledge of the information requested, and that defendant Pinkelton had a duty to supervise officers on the scene and protect Mr. Lee from the use of excessive force. The plaintiffs also responded that "as discovery is ongoing, it is not known the extent of Pinkelton's acts or omissions." However, in the plaintiff's supplemental response, the plaintiffs state that "[a]t this time, it appears that Justin Pinkelton was not involved in beating, Tasing or using pepper spray on Patrick Lee," but he failed to intervene and supervise other officers under his command who were on the scene. The plaintiffs also listed five persons who may have knowledge, without providing any identifying information other than their names, "[i]n addition to those individuals already deposed and identified by the Plaintiffs."

Defendant Pinkelton concludes that the "[p]laintiffs have accurately and quite properly stated that Sergeant Pinkelton did NOT beat, spray, or use a TASER on Patrick Lee, as was incorrectly alleged in their amended complaint." However, defendant Pinkelton argues that the plaintiffs' assertions that he failed to intervene and supervise are "mere conclusions." Defendant Pinkelton seeks facts to support the plaintiffs' contention that he failed to intervene and supervise. Specifically, defendant Pinkelton wants the plaintiffs to identify which officers engaged in what unconstitutional acts that defendant Pinkelton failed to supervise or intervene to stop, and when should he have intervened. In summary, defendant Pinkelton wants to know "exactly" what he did wrong that "makes him liable to Plaintiffs," what "exactly" did he fail to do, if anything, and whether or not he used excessive force.

In Interrogatory No. 1(b), the defendant Pinkelton seeks a description:

. . . in detail [of] every act or omission by [defendant Pinkelton] that [the plaintiffs] say amounted to the use of excessive force against Patrick Lee, and "identify" every person who has knowledge of the information requested.

The plaintiffs' initial response to Interrogatory No. 1(b) was exactly the same as their response to Interrogatory No. 1(a). The plaintiffs' supplemental response referred to their supplemental response to Interrogatory No. 1(a).

Defendant Pinkelton apparently remains unsure about whether or not the plaintiffs are asserting that he used excessive force.

In Interrogatory No. 1(c), defendant Pinkelton seeks a description:

. . . in detail [of] each separate occasion on which [the plaintiffs] say [defendant Pinkelton] beat, kicked, or otherwise came into physical contact with Patrick Lee and "identify" every person who has knowledge of the information requested.

The plaintiffs initially responded that it was "expected" that the police officer defendants, "eye witnesses previously identified," and the EMTs on the scene had knowledge responsive to the interrogatory, that "[a]s discovery is ongoing, it is not known the extent of Pinkelton's acts or omissions." However, the plaintiffs also responded that they do not know "at this time" of any instances when Sgt. Pinkelton came into physical contact with Patrick Lee. The plaintiff's supplemental response referred to their supplemental response to Interrogatory No. 1(a).

Defendant Pinkelton argues that the plaintiffs should be compelled to "state clearly" whether or not he beat, kicked or otherwise came into physical contact with Patrick Lee, "as erroneously alleged in [the plaintiffs'] amended complaint."

In Interrogatory No. 1(d), defendant Pinkelton seeks a description:

. . . in detail [of] each act or omission by [defendant Pinkelton] that [the plaintiffs] say resulted in an electrical shock to Patrick Lee, and "identify" every person who has knowledge of the information requested.

The plaintiffs responded in their initial response exactly as they had in the prior responses, except that the plaintiffs added that "[i]t is not believed that Sgt. Pinkelton was in possession of a Taser." In their supplemental response, they referred to their response and supplemental response to Interrogatory No. 1(a).

3

Again, defendant Pinkelton contends that, unless the plaintiffs have contrary evidence, they should be directed to respond that not only was Sgt. Pinkelton not "in possession" of a Taser but also that he did not use a Taser, as the plaintiffs incorrectly alleged in the amended complaint.

In Interrogatory No. 1(e), defendant Pinkelton seeks a description:

> . . . in detail [o]f each act of omission by this defendant that [the plaintiffs] say amounted to negligence that proximately caused a loss or injury to the plaintiffs or their decedent [and] the specific legal duty [the plaintiffs] say was breached by this defendant, resulting in loss or injury to the plaintiffs or their decedent [and] "identify" every person who has knowledge of the information requested . . . .

The plaintiffs responded exactly as they had in the prior responses, and, in addition responded that defendant Pinkelton "was on the scene and had a duty to supervise those officers beneath him and protect Patrick Lee from the use of excessive force. He also had a duty to follow all Metropolitan Police Department general orders and ensure that the other officers on the scene did the same." The plaintiffs' supplemental response refers to the response and supplemental response to Interrogatory No. 1(a).

Defendant Pinkelton argues that he is entitled to an explanation of how he is responsible for intentionally using excessive force on Mr. Lee, and how he was negligent and how his negligence resulted in harm to Mr. Lee. The defendant seeks a response clarifying whether he intentionally harmed Mr. Lee, was "merely negligent," or both, whether his failure to supervise was intentional or negligent, what facts the plaintiffs have to show that he breached his duty to supervise and follow department general orders and ensure that other officers did the same, and how his breach of those duties result in loss or injury to the plaintiffs or Mr. Lee.

In Interrogatory No. 1(f), defendant Pinkelton seeks an explanation with specificity of:

> . . . how each of the acts or omissions by this defendant . . . proximately caused the death of Patrick Lee, and "identify" every person who has knowledge of the information requested.

The plaintiff responded that the other police officer defendants, eye witnesses, and EMTs have knowledge of the information requested, that the proximate cause of Mr. Lee's death will require expert testimony, and that the plaintiffs will provide expert reports on causation as required

4

by the scheduling order. In their supplemental response, the plaintiffs also identified health care providers at Vanderbilt Medical Center as persons who have responsive information.

Defendant Pinkelton contends that expert testimony is not necessary for the plaintiffs to respond since he seeks the factual basis of their claim that his acts or omissions caused Mr. Lee's death. In addition, defendant Pinkelton points out that the plaintiffs did not provide the full names, street addresses or telephone numbers of Mr. Lee's heath care providers.

Interrogatory 2(a) seeks the same information related to defendant Mays as was sought related to defendant Pinkelton. In part, the plaintiffs responded similarly that the police officer defendants, eye witnesses and EMTs had knowledge of the responsive information, but, in addition, "individuals from the Metropolitan Police Department and Taser, Int'l" have knowledge of responsive information. The plaintiff also responded that "[i]t is known that Officer Mays used his Taser at least 9 times and that he actively participated in the arrest which was a collection of force on the part of numerous officers." Further, the plaintiffs responded that "[i]t was also been suggested" that defendant Mays failed to read the bulletin that was e-mailed to him about multiple discharges of the Taser and the use of Tasers "on individuals experiencing the signs of excited 'delerium (sic)," and that, if he did read the bulletin and did not understand, he should have asked for an explanation.

In their supplemental response, the plaintiffs respond that defendant Mays failed to intervene to protect Mr. Lee from the use of excessive force by other police officers and to protect his constitutionally guaranteed rights. Finally, the plaintiffs responded, as they had to Interrogatory No. 1(a), by listing five persons "[i]n addition to those individuals already deposed and identified by the Plaintiffs."

The defendant argues that plaintiffs' use of the word "used" is not clear since he does not know whether the plaintiffs contend that he "merely pulled the trigger" nine times or actually delivered nine applications of electrical current to Mr. Lee. Defendant Mays also seeks information about what he did--not his "active [participation] in the "collection of force on the part of numerous

5

officers." The defendant expresses confusion over what the phrase "it has been suggested" means, and whether the plaintiffs contend that the failure of defendant Mays to read or understand the police bulletin was a violation of Mr. Lee's rights, or whether any such failure was intentional, negligent, or both.

As with the concerns raised in response to Interrogatory No. 1(a), defendant Pinkelton describes the plaintiffs' response that defendant Mays failed to intervene as a "mere conclusion," and that the plaintiffs failed to specify in detail how the failure to intervene violated Mr. Lee's rights. Again, the defendant seeks the facts supporting a claim of failure to intervene, and an identification of the unconstitutional acts by what officers in which he failed to intervene, how his failure to intervene proximately resulted in loss or damage to the plaintiffs or their decedent, and the moment in time when he should have intervened. The defendant appears perplexed about whether the plaintiffs are contending that defendant Mays used excessive force or not and what "exactly" he did wrong.

Finally, the defendant complains that the plaintiffs did not provide the street addresses and telephone numbers of the witnesses.

Interrogatory No. 2(b) is exactly the same as Interrogatory No. 1(b), except it relates to defendant Mays. The plaintiffs responded to this interrogatory by referring to their response to Interrogatory No. 2(a). The defendant reiterates his objections to the plaintiffs' response to Interrogatory No. 2(a).

Interrogatory No. 2(c) is exactly the same as Interrogatory No. 1(c), except it relates to defendant Mays.

The plaintiffs responded that the other police officer defendants, eye witnesses previously identified, the EMTs, individuals from the Police Department and Taser, Int'l have knowledge of responsive information. The plaintiffs also responded that they do not know the extent of defendant Mays' acts or omissions, but "it is known" that he used his Taser at least nine times. The plaintiffs also responded that many of the witness statements vary and contradict each other so it is impossible

6

to detail every time that defendant Mays used his Taser. In their supplemental response, however, the plaintiffs responded that they know of "no other physical contact" between defendant Mays and Mr. Lee other than that described in the original response.

Again, the defendant seeks information about how many times defendant Mays delivered an "actual effective" application of electrical current to Mr. Lee. Further, the defendant argues that the plaintiffs should be required to identify which witness statements they rely on to establish defendant Mays' liability, even if the statements vary and are contradictory.

Interrogatory No. 2(d) is exactly the same as Interrogatory No. 1(d), except that it relates to defendant Mays. In their response, the plaintiffs referred to their response to Interrogatory No. 2(c). In their supplemental response, the plaintiffs also responded that Taser International has responsive information. The supplemental response is perplexing since the original response included Taser International.

Again, the defendant seeks information about how many times defendant Mays delivered an actual application of electrical current to Mr. Lee and the facts that support the response.

Interrogatory No. 2(e) is exactly the same as Interrogatory No. 1(e). The plaintiffs responded that the same persons listed in prior responses have responsive information and that the exact extent of defendant Mays' acts or omissions is not yet known. The plaintiffs further responded that defendant Mays had a duty to protect Mr. Lee from the use of excessive force, a duty to follow police department general orders and ensure that other officers on the scene followed those orders, and a duty to follow the training he received from Metro and Taser on the use of Tasers and that, "on information and belief, he did not do so." In their supplemental response, the plaintiffs also responded that defendant Mays failed to intervene to protect Mr. Lee from the use of excessive force by other police officers and to protect his constitutional rights. The plaintiffs also supplemented by providing the names of the five witnesses previously provided.

The defendant explains that he seeks information about how defendant Mays was negligent and how his negligence resulted in harm to Mr. Lee, whether defendant Mays intentionally harmed

7

Mr. Lee or was negligent, and, if he were negligent, what duty he breached and how the breach proximately resulted in the loss of damage to the plaintiffs or their decedent.

Interrogatory No. 2(f) is exactly the same as Interrogatory No. 1(f), except it relates to defendant Mays. The plaintiffs responded exactly as they had in their response and supplemental response to Interrogatory No. 1(f).

Again, the defendant argues that expert testimony is not necessary before the plaintiffs can respond to this interrogatory, and that the defendant seeks the basis for their claim that the acts or omissions of Officer Mays caused Mr. Lee's death, and the plaintiffs' theory about what happened to Mr. Lee, specifically, whether the plaintiffs contend, as they alleged in their amended complaint, that Mr. Lee was electrocuted by one or more Taser applications.

In their response in opposition (Docket Entry No. 137) to the motion to compel, the plaintiffs contend that the motion is "flawed" because (1) the information the defendant seeks in the motion goes "far beyond" the scope of the interrogatories themselves and many of the defendants' questions can be found in the initial disclosures and other documents; (2) the plaintiffs' responses comply with the July 3, 2007, order; (3) the defendants "never properly explained to Plaintiffs exactly what their objections are;" (4) since Mr. Lee is dead, he cannot provide his account and the plaintiffs must obtain the "vast majority of the factual information" from the defendants; (5) the defendants have failed to provide the necessary factual information before the plaintiffs supplemented their discovery responses and some of the information has still not been provided; (6) reciting all of the facts upon which the plaintiffs' allegations are based would require the plaintiffs to summarize the defendants' inconsistent testimony and make judgments about the credibility of that testimony, amounting to an invasion of plaintiffs' counsel's work product; and (7) much of the information requires expert opinion testimony.

<u>Lack of Clarity About Defendants' Objections/ Beyond the Scope</u>

The parties did not file a joint written statement of the discovery disputes, as required by Local Rule 37.01(a). The plaintiffs contend that the defendant did not explain what the objections

8

were, making it impossible for the parties to prepare a such a joint statement. That explanation is not persuasive to the Court. In fact, this situation is exactly the situation in which a joint written statement, if detailed and specific, could have been helpful to both the Court and the parties. Counsel should have met face-to-face in an effort to resolve these issues, some of which revolve around insertion of unnecessary phrases and other semantic issues and some of which are more substantive. Whether or not what the defendant seeks was encompassed within the interrogatories themselves, some agreement might have been reached. The Court is perplexed by the plaintiffs' suggestion that the defendant was not clear in his objections. The defendant was very clear.[1]

Whether what the defendant sought was properly within the scope of the interrogatories or otherwise proper is an entirely different issue. The Court has considered what information was actually sought by the interrogatories at issue and has limited its rulings below to the scope of the interrogatories themselves, which, in part, is more narrow than the information the defendant wants from the plaintiffs.

The plaintiffs also complain that the information requested by the defendant can be found in initial disclosures and other documents. Although the defendant should not be permitted to propound the same interrogatory over and over, the defendant is entitled to seek information from the plaintiff even if the information is contained in documents available to all parties and even if the information is also in the possession of the defendants.

Compliance with July 26, 2007, Order

The plaintiffs argue that they complied with the order entered July 26, 2007 (Docket Entry No. 94), in which some of these issues were addressed. That order, and the July 5, 2007, discussion during the telephone conference call with counsel and the Court, focused on the identification of witnesses, what discovery is properly covered under the work product doctrine, and the timing for

---

[1] The defendant explained that the specific questions listed in his motion were included in the "vain hope" that the plaintiffs would "realize the scope of the information sought in the original interrogatories." Docket Entry No. 138, at 3.

9

supplementation and responses to the defendants' written discovery. However, when the defendant was not satisfied with the plaintiffs' responses, the Court granted the defendant's motion to file another motion to compel further responses. <u>See</u> Docket Entry Nos. 105 and 106.

<u>Lack of Information Available to the Plaintiffs</u>

The plaintiffs point out that, because Mr. Lee is dead, he cannot provide his account of what happened and that the plaintiffs must rely upon information provided by the defendants, which the defendants have been slow to provide. In addition, the plaintiffs did not have expert reports at the time of their responses to the interrogatories and could not address issues related to causation.

That time has now passed. The plaintiff should now have sufficient information--both factual and expert--to supplement their responses to these interrogatories.

At any point that a party responds to discovery requests, however, the responsive information relates to that information available at the time of the responses. It is not necessary to include phrases such as "based upon discovery to date." If further investigation or discovery reveals additional or different information, the party is under an obligation to supplement the responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

<u>Work Product Protection</u>

The plaintiffs are correct that they should not be required to provide counsel's legal strategy, thought processes, or mental impressions. Specifically, the plaintiffs are not, as they point out, required to "repeat or write out all that witnesses have told him and to deliver the account to his adversary." <u>Hickman v. Taylor,</u> 329 U.S. 495, 512-13, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947). The plaintiffs contend that the defendant wants the plaintiffs to summarize all of the factual information in their possession and assess the credibility of witnesses. The plaintiffs point out that it is the defendants who are in possession of the factual information--not the plaintiffs.

The defendant does not, however, seek the plaintiffs' mental impressions or information protected by the work product doctrine. Although the Court acknowledges that, in part, the defendant's interrogatories may be as much contention interrogatories as interrogatories seeking

10

factual information, the plaintiffs are not required to summarize information, assess credibility, or provide the defendant with discrepancies in the defendants' testimony. At bottom, the defendant seeks to clarify the plaintiffs' contentions as to specific defendants and for the plaintiffs to provide the facts that support those contentions. Such interrogatories are appropriate. There may well be interrogatories that the plaintiffs simply cannot answer. If that is the case, the plaintiffs should respond that they do not know. If they gain further information that would allow them to respond, they are obligated to supplement their responses.

It appears that the plaintiffs may be suggesting that a jury should hear all of the contradictory testimony at trial and that a jury should determine what happened, how it happened and when it happened.

Presumably, however, the plaintiffs have or will have at trial, a theory about what defendants did what. The defendant is entitled to that information. If they intend at trial to take the position that they do not know who did what, the defendant is entitled to that information.

### Silly Objections

The plaintiffs describe as "silly" the defendant's insistence upon the plaintiffs' providing the addresses and telephone numbers of the five witnesses listed by the plaintiffs since defendant Metro and the plaintiffs provided those names in their initial disclosures and the plaintiffs provided the available addresses and telephone numbers.

The Court agrees that this dispute is "silly" and one that the parties should have been able to resolve. However, the Court also assumes that the defendant seeks the most current addresses and telephone numbers. It clearly would have been easier for the plaintiffs to have provided that information--even if it is exactly the same as previously provided--than to have left this dispute unresolved.

### Misstatement of Plaintiffs' Allegations

The plaintiffs argue that the defendants continue to misstate the allegations in the plaintiffs' amended complaint and that the plaintiffs have never alleged that all of the defendants kicked or beat

11

Mr. Lee or used pepper spray or Tasers. The problem with that assertion is that the plaintiffs' allegations in the amended complaint are not entirely clear. Although the plaintiffs allege, upon information and belief, that the Tasers were in the possession of defendants Mays and Scruggs, the plaintiffs allege that Mr. Lee "was beaten, kicked, struck numerous times with batons and electrically shocked with a Taser stun gun approximately nineteen times," Docket Entry No. 53, at 5, ¶ 24, that the "vicious beating, electrocution, use of chemical agent and other wrongful acts conducted against [Mr. Lee] by the Defendants including, but not limited to, Defendant Officers, constituted unreasonable and excessive force by a police officer as well as abuse of process" and that those actions were "negligent, reckless, unreasonable and unauthorized, as the Defendants had a duty to not subject Plaintiffs' decedent to vicious and fatal police actions, but failed to prevent same and breached that duty." id. at 14, ¶ 67, and that the "Defendant Police Officers acted negligently in that they had a duty to act reasonably and responsibly and not to act in a manner which would cause the death of Patrick Lee [and] not to repeatedly shock, chemically spray, beat and otherwise abuse Plaintiffs' decedent in such a way that would summarily cause his death." Id. at 19, ¶ 85. Thus, although the plaintiffs may not have specifically alleged that each officer kicked or beat Mr. Lee or that each officer used pepper spray or Tasers, is not clear which defendants are included in the generalized allegations relating to all defendants.

The plaintiffs shall supplement their responses to the interrogatories served by defendant Pinkelton as follows:

1. Interrogatory No. 1(a)

The plaintiffs shall supplement their response to this interrogatory by specifying the acts or omissions that they contend were violations of Mr. Lee's constitutional rights. If those acts or omissions are limited to his failure to supervise and/or intervene, the plaintiffs shall specify how defendant Pinkelton failed to supervise and how he failed to intervene. That response will necessarily include what police officers defendant Pinkelton failed to supervise and what conduct he failed to intervene to prevent.

12

The plaintiffs shall refrain from using words or phrases such as "it is expected," and "at this time." If the plaintiffs do not know specific information related to how defendant Pinkelton failed to supervise or failed to intervene, they shall so state.

The plaintiffs shall provide the current addresses and telephone numbers of the witnesses who have knowledge of the information provided in the responses, and specifically identify those witnesses "already deposed and identified," with their last known addresses and telephone numbers, who have such knowledge.

    2.    Interrogatory No. 1(b)

The supplementation of the response to this interrogatory should be included in the supplementation to the response to interrogatory no. 1(a). However, if the plaintiffs are not asserting that defendant Pinkelton used excessive force, the plaintiffs shall respond that they are not so contending, without using phrases such as "at this time."

    3.    Interrogatory No. 1(c)

The plaintiffs shall specify the instances in which defendant Pinkelton beat, kicked or otherwise came into physical contact with Mr. Lee. Again, if the plaintiffs do not know, they shall respond with the factual basis for any such contention that they have, and, if appropriate, that they do not know the specific instances. However, if the plaintiffs are not asserting that defendant Pinkelton beat, kicked, or otherwise came into physical contact with Mr. Lee, the plaintiffs shall clearly so state, without using phrases like "at this time."

    4.    Interrogatory No. 1(d)

Assuming that the plaintiffs do not contend that defendant Pinkelton was in possession of or used a Taser, the plaintiffs shall supplement their response to this interrogatory that he was not in possession of a Taser and did not use a Taser, deleting the phrase "it is not believed." If the plaintiffs now contend that defendant Pinkelton had possession of or used a Taser, they shall supplement their response to this interrogatory by specifying any instance in which defendant Pinkelton possessed or used a Taser during the incident.

13

5. Interrogatory No. 1(e)

The plaintiffs shall supplement their response to this interrogatory by specifying what defendant Pinkelton did or did not do that was negligent and proximately caused harm and death to Mr. Lee, and what duty defendant Pinkelton breached.

If, for instance, the plaintiffs contend that defendant Pinkelton was negligent by failing to prevent other officers from beating, kicking, using chemical spray and/or a Taser, plaintiffs shall so state with as much specificity as possible. Specifically, the plaintiffs shall respond with their contentions and facts available to them about the point at which defendant Pinkelton should have intervened and what specific actions by what officers he should have prevented. If the plaintiffs do not have the information to respond with specificity, they shall so state.

If the plaintiffs contend that defendant Pinkelton was negligent in not following police department general orders or in ensuring that others followed those orders, they shall respond by providing the general orders not followed with specific explanations of how defendant Pinkelton did not comply with those orders or require the officers whom he supervised to comply with them.

The defendant seeks clarification of whether the plaintiffs contend that defendant Pinkelton's conduct was negligent or intentional. If the plaintiffs contend that the same conduct described in their response to Interrogatories Nos. 1(a) constitutes the conduct upon which the plaintiffs contend defendant Pinkelton was negligent, they shall so state.

6. Interrogatory No. 1(f)

It is not clear to the Court how this interrogatory substantially varies from Interrogatory No. 1(e). However, the plaintiffs contend that the response to this interrogatory specifically calls for information relating to causation, although the defendant explains that he is not seeking expert opinion but rather the factual basis of the plaintiffs' claim. Regardless, since the plaintiffs should now have provided expert reports, the plaintiffs shall supplement their response to this interrogatory by providing a factual explanation for their contention that the acts or omissions of defendant Pinkelton proximately caused Mr. Lee's death.

14

In addition, the plaintiffs shall supplement their response to this interrogatory by providing the names, work (or home) addresses, and telephone numbers of Mr. Lee's health care providers. If the work address is simply Vanderbilt Hospital, that is sufficient. However, some of the heath care providers may no longer work at Vanderbilt.

7. Interrogatory No. 2(a)

The plaintiffs shall supplement their response to this interrogatory to specify the acts or omissions that they contend violated Mr. Lee's constitutional rights, and specifically respond whether or not they contend that defendant Mays used excessive force. If those acts were limited to "using" the Taser nine times, the plaintiffs shall so state. If "using" the Taser means the delivery of nine applications of electrical current to Mr. Lee, the plaintiffs shall so state. If the plaintiffs do not know how many, if any, of defendant Mays' "uses" of the Taser actually resulted in delivery of electrical current to Mr. Lee, the plaintiffs shall so state. If defendant Mays also failed to intervene to protect Mr. Lee's rights, the plaintiffs shall specify how and when he failed to intervene, including what conduct by what police officers defendant Mays failed to intervene to prevent.

The plaintiffs shall further supplement their response to this interrogatory by clarifying whether or not they contend that defendant Mays did not read the police bulletin relating to use of Tasers, whether or not he read the bulletin and did not understand it, and whether or not that such failure to read or understand was a violation of or resulted in the violation of Mr. Lee's constitutional rights. The plaintiffs shall refrain from phrases like "it has been suggested." Either the plaintiffs assert that defendant Mays failed to read or failed to understand the bulletin or they do not.

The plaintiffs shall not be required to supplement their response to address whether they allege that defendant Mays' conduct was intentional, negligent or both.

8. Interrogatory No. 2(b)

The plaintiffs' supplementation of their response to Interrogatory No. 2(a) should be responsive to this interrogatory.

9. Interrogatory No. 2(c)

15

To a great extent the information defendant Mays seeks is subsumed in Interrogatory No. 2(a). However, assuming that the plaintiff's present position is that the only physical contact that defendant Mays had with Mr. Lee was his discharge of the Taser nine times, the plaintiffs shall supplement their response to this interrogatory by identifying the specific witnesses with knowledge of that conduct, with their current or last known addresses and phone numbers, if the plaintiffs have that information.

The plaintiffs shall not be required to identify "witness statements" upon which they rely, but shall only be required to identify persons having knowledge of any physical contact defendant Mays had with Mr. Lee, as requested in the interrogatory.

10. Interrogatory No. 2(d)

The plaintiffs shall not be required to supplement their response to this interrogatory since the information sought in the interrogatory is addressed in the context of the plaintiffs' supplementation of interrogatory 1(a).

11. Interrogatory No. 2(e)

The plaintiffs shall supplement their response to this interrogatory by specifying what defendant Mays did or did not do that was negligent and proximately caused harm and death to Mr. Lee and what duty defendant Mays breached, in the same manner that they were required to supplement their response to Interrogatory No. 1(e).

12. Interrogatory No. 2(f)

The plaintiffs shall supplement their response to this interrogatory by providing a factual explanation for their contention that the acts or omissions of defendant Mays proximately caused Mr. Lee's death.

The plaintiffs shall have until March 24, 2008, to serve supplementation of their responses to the interrogatories propounded by defendant Pinkelton.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than ten (10) days from the date of service of this order. The motion for review

must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 9(a)(1) of the Local Rules for Magistrate Judge Proceedings.

It is so ORDERED.

_____
JULIET GRIFFIN
United States Magistrate Judge