1    UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF TENNESSEE
2              NASHVILLE DIVISION

3    _____

4    BUD LEE, et al,                    )
                                        )
5              Plaintiffs,              )
     vs.                                )  CASE NO. 3:06-0108
6                                       )
                                        )  JURY TRIAL
7                                       )
                                        )  VOLUME 17
8    METROPOLITAN GOVERNMENT OF         )
     NASHVILLE AND DAVIDSON COUNTY,     )
9    et al,                             )
                                        )
10             Defendants.              )

11   _____

12

13               TRANSCRIPT OF PROCEEDINGS

14

15   _____

16

17   BEFORE:              THE HONORABLE ALETA A. TRAUGER

18   DATE:                MAY 18, 2009

19   TIME:                9:00 A.M.

20   _____

21

22   REPORTED BY:         BEVERLY E. "BECKY" COLE, RPR, CCR
                          OFFICIAL COURT REPORTER
                          A-837 U.S. COURTHOUSE
23                        NASHVILLE, TN  37203
                          (615) 254-6727
24                        BECKY_COLE@TNMD.USCOURTS.GOV

25

```
1                          APPEARANCES

2

3    FOR THE PLAINTIFFS:       JOSEPH PAUL BEDNARZ, JR.
                               JOSEPH PAUL BEDNARZ, SR.
4                              JOSEPH A. NAPILTONIA
                               Bednarz & Bednarz
5                              Parkway Towers, Suite 1400
                               404 James Robertson Parkway
6                              Nashville, TN  37219

7

8    FOR THE DEFENDANTS:       ALLISON BUSSELL
                               KELI OLIVER
9                              Metropolitan Legal Department
                               P.O. Box 196300
10                             Nashville, TN   37219

11                             JOHN M.L. BROWN
                               222 2nd Avenue North, Suite 312
12                             Nashville, TN  37201

13                             TYREE BRYSON HARRIS, IV
                               KATHERINE BROWN
14                             Willis & Knight
                               215 2nd Avenue North
15                             Nashville, TN  37201

16                             JESSIE RAY AKERS, JR.
                               1161 Murfreesboro Road
17                             Suite 430
                               Nashville, TN  37217
18

19

20

21

22

23

24

25
```

1      THE COURT:  Good morning.  I hope everyone is

2   rested.  They are the ones that need to be rested, however.

3          (Laughter.)

4      THE COURT:  Okay.  We're ready.  We have the

5   Taser, and the batteries are out of it, right?

6      MS. BUSSELL:  Yes, Your Honor.

7          (Jury enters.)

8      THE JURORS:  Good morning.

9      THE COURT:  I hope you are well rested.  Has

10  everyone adhered to my instruction not to discuss the case

11  with anyone or amongst yourselves?

12    Has everyone adhered to my instruction not to do any

13  research connected to the case, and has everyone ignored any

14  publicity there might be?

15          (No negative responses.)

16      THE COURT:  Very good.  Members of the jury, now

17  that you have heard the evidence and the argument, it

18  becomes my duty to give you the instructions of the Court as

19  to the law applicable to this case.  You will have

20  individual copies of these instructions in the jury room

21  with you.

22    It is your -- actually, let's pass out the copies now,

23  and they can follow along with me, and if you want to write

24  on them or underline as we go along.

25    Anybody object to that process?  I have not done it

1   before, but it occurs to me it makes sense.

2           MR. BEDNARZ, SR.:  No, Your Honor.

3           MR. AKERS:  No, Your Honor.

4           MR. HARRIS:  No, Your Honor.

5           MR. BROWN:  No, Your Honor.

6           MS. BUSSELL:  No, Your Honor.

7           THE COURT:  It just occurs to me, it makes sense.

8   It is your duty, as jurors, to follow the law as I shall

9   state it to you and to apply that law to the facts as you

10  find them from the evidence in this case.

11      You are not to single out one instruction alone as

12  stating the law, but must *use the instructions as a whole.

13  Neither are you to be concerned with the wisdom of any rule

14  of law stated by me.

15      The lawyers may have referred to some of the

16  *government's rules of law in their arguments.  If, however,

17  there is any difference between the law as stated by the

18  lawyers and that stated in these instructions, you are, of

19  course, to follow these instructions.

20      Nothing I say in these instructions is to be taken as

21  an indication that I have any opinion about the facts of the

22  case or what that opinion is.  It is not my function to

23  determine the facts, but yours.

24      Now, some of you may have heard the terms "direct

25  evidence" and "circumstantial evidence."

1    Direct evidence is simply evidence like the testimony

2    of an eyewitness, which, if you believe it, directly proves

3    a fact.  If a witness testified that he saw it raining

4    outside, and you believed him, that would be direct evidence

5    that it was raining.

6    Circumstantial evidence is simply a chain of

7    circumstances that indirectly proves a fact.  If someone

8    walked into the courtroom wearing a raincoat covered with

9    drops of water and carrying a wet umbrella, that would be

10   circumstantial evidence from which you could conclude that

11   it was raining.

12   It is your job to decide how much weight to give the

13   direct and circumstantial evidence.  The law makes no

14   distinction between the weight that you should give to

15   either one and does not say that one is any better evidence

16   than the other.

17   You should consider all the evidence, both direct and

18   circumstantial, and give it whatever weight you believe it

19   deserves.

20   Certain testimony has been read into evidence from a

21   deposition -- a deposition or viewed by video on the screen.

22   A deposition is testimony taken under oath before the

23   trial and preserved in writing.  You are to consider that

24   testimony as if it had been given in court.  This applies to

25   the witnesses who testified by deposition that were either

1    read with two readers or up on the screen.

2         Depositions were also used for impeachment purposes,

3    and I'm going to talk about that in just a minute, but this

4    instruction refers to where the witness testified by

5    deposition, on the screen, or with two people reading.

6         Certain charts and summaries have been shown to you in

7    order to help explain facts disclosed by books, records and

8    other documents.  However, such charts or summaries are not,

9    in and of themselves, evidence or proof of any facts.

10        If such charts or summaries do not correctly reflect

11   facts or figures shown by the evidence in the case, you

12   should disregard them.

13        In other words, such charts or summaries are used only

14   as a matter of convenience, so if to the extent that you

15   find they are not in truth summaries of facts or figures

16   shown by the evidence in the case, you are to disregard them

17   entirely.

18        Evidence does not include several things that you have

19   heard in this courtroom.  Evidence does not include any

20   statement of the attorneys during the trial, including their

21   closing arguments.  You must decide for yourself whether you

22   believe the facts show what the attorneys have argued they

23   show.

24        Evidence does not include answers, statements or

25   comments made by the attorneys that I ordered stricken.  You

1   are to treat anything that I ordered stricken as if you had

2   never heard it.

3        Finally, evidence does not include any objections

4   raised by the attorneys.  You must not speculate why I

5   sustained or overruled any objection, nor are you permitted

6   to guess what the answer might have been to any question I

7   did not allow.

8        You may not draw any inference or speculate on the

9   truth of any suggestion included in a question that was not

10  answered.

11       During the course of the trial, I have admitted some

12  evidence for a limited purpose.  For instance, the evidence

13  about drug use by the plaintiff being relevant to the

14  pecuniary value of his life -- of Patrick Smith, rather --

15  Patrick Lee being relevant to the pecuniary value of his

16  life, I think I gave you a limiting instruct at that time.

17       An exhibit or testimony can be admissible for one

18  purpose, but not for another.  To the extent that it is

19  relevant, you may consider any such evidence only for the

20  purpose for which it was admitted, such as to show the

21  speaker's mental state or to establish that a complaint was

22  made.  Such evidence should not be considered by you as

23  proof of the truthfulness of specific factual matters.

24       Another part of your job as jurors is to decide how

25  credible or believable each witness was.  This is your job,

not mine.  It is up to you to decide if a witness' testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all.  But you should act reasonably and carefully in making these decisions.

Let me suggest some things for you to consider in evaluating each witness' testimony.

Ask yourself if the witness was able to clearly see or hear the events.  Sometimes even an honest witness may not have been able to see or hear what was happening and may make a mistake.

Ask yourself how good the witness' memory seemed to be; did the witness seem able to accurately remember what happened.

Ask yourself if there was anything else that may have interfered with the witness' ability to perceive or remember the events.

Ask yourself how the witness acted while testifying; did the witness appear honest, or did the witness appear to be lying.

Ask yourself if the witness had any relationship to the plaintiffs or the defendants or anything to gain or lose from the case that might influence that witness' testimony.

Ask yourself if the witness had any bias or prejudice or reason for testifying that might cause the witness to lie

1   or to slant the testimony in favor of one side or the other.

2       And ask yourself how believable the witness' testimony

3   was, in light of all the other evidence; was the witness'

4   testimony supported or contradicted by other evidence that

5   you found believable.

6       If you believe that a witness' testimony was

7   contradicted by other evidence, remember that people

8   sometimes forget things, and that even two honest people who

9   witness the same event may not describe it exactly the same

10  way.

11      These are only some of the things that you may

12  consider in deciding how believable each witness was.  You

13  may also consider other things that you think shed some

14  light on the witness' believability.

15      Use your common sense and your everyday experience in

16  dealing with other people, and then decide what testimony

17  you believe and how much weight you think it deserves.

18      Discrepancies in a witness' testimony or between his

19  or her testimony and that of others do not necessarily mean

20  that the witness should be discredited.  Failure of

21  recollection is a common experience, and innocent mistakes

22  recalling certain facts are not uncommon.

23      Two persons witnessing the same incident or

24  transaction often will see or hear it differently, whether a

25  discrepancy pertains to a fact of importance or only to a

trivial detail considered in waiving it significance.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony here in court.

If you believe any witness has been impeached and, thus, discredited, you may give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust that witness' testimony in other particulars, and you may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is knowingly done if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

In reaching your verdict, you are to consider only the evidence in this case. However, you are not required to set aside your common sense. And you have the right to weigh the evidence, in the light of your own observations and experiences.

The party with the burden of proof on any given issue has the burden of proving every disputed element of his or

her claim to you by a preponderance of the evidence.

If you conclude that the party bearing the burden of proof has failed to establish his or her claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

What does a preponderance of the evidence mean. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, that is, it is equally probable that one side is right as it is that the other side is right, then you must decide that issue against the party having the burden of proof. That is because the party bearing the burden must prove more than simple equality of evidence.

On the other hand, the party with the burden of proof need prove no more that a preponderance. So as long as you find that the scales tip, however slightly in favor of the party with this burden of proof, then that element will have been proved by a preponderance of the evidence.

1      Some of you have heard of proof beyond a reasonable

2  doubt, which is proper standard of proof in a criminal

3  trial.  That requirement does not apply to a civil case such

4  as this, and you should put it out of your mind.

5      All right.  Title 42, United States Code Section 1983.

6  Plaintiffs Bud Lee and Cindy Lundman, as next friend and

7  natural parents of Patrick Lee, deceased, claim damages

8  alleged to have been sustained as the result of a

9  deprivation under color of state law of a right secured to

10  the decedent, Patrick Lee, by the fourth amendment of the

11  U.S. constitution, and by a federal statute protecting the

12  civil rights of all persons within the United States.

13      Specifically, the plaintiffs allege that the defendant

14  police officers subjected Patrick Lee to deprivation of

15  rights and privileges secured and protected by the

16  constitution and the laws of the United States, namely the

17  constitutional right to be free from the excessive use of

18  force against him during the course of an arrest.

19      Defendant police officers deny that any of their

20  actions during the time in question violated Patrick Lee's

21  constitutional rights.  Defendant police officers state that

22  they were acting in good faith and with probable cause and

23  that their actions were reasonable.

24      Defendant police officers further claim that they were

25  not guilty of any fault or wrongdoing in regard the incident

1   sued upon.

2       In order to prove plaintiffs' claim, the burden is

3   upon the plaintiffs, Bud Lee and Cindy Lundman, as next

4   friend and natural parents of Patrick Lee, deceased, to

5   establish by a preponderance of the evidence each of the

6   following elements.

7       First, that defendant police officers performed acts

8   that operated to deprive the decedent, Patrick Lee, of one

9   or more of his federal constitutional rights, as defined and

10   explained in these instructions, by using excessive force

11   against him during the course of his arrest.

12       Second, that the defendant police officers, then and

13   there, acted under color of state law.

14       And, third, that the defendant police officers' acts

15   were the proximate cause of damages sustained by Patrick

16   Lee.

17       Because the defendant police officers were officials

18   of the Metropolitan Nashville Police Department at the time

19   of the act in question, their acts -- they were acting under

20   color of state law.

21       I instruct you to that effect. In other words, the

22   second requirement has been satisfied, and you do not need

23   to deliberate on that second element.

24       Causation. An injury or damage is proximately caused

25   by an act or failure to act whenever it appears from the

1    evidence in the case that the act or omission played a

2    substantial part in bringing about or actually causing the

3    injury or damage to Patrick Lee, and that the injury or

4    damage was either a direct result or a reasonably probable

5    consequence of the act or omission.

6        The plaintiffs have the burden of proving each and

7    every element of their claims by a preponderance.  If you

8    find that the plaintiffs have not proved any one of the

9    elements against a police officer defendant by a

10   preponderance of the evidence, then you must return a

11   verdict in favor of that defendant police officers.

12       Excessive force.  Plaintiffs Bud Lee and Cindy

13   Lundman, as next friend and natural parents of Patrick Lee,

14   deceased, claim that the defendant police officers used

15   excessive force when they arrested Patrick Lee.

16       In making a lawful arrest, a law enforcement officer

17   has the right to use such force as is necessary under the

18   circumstances to effect the arrest.  Whether or not the

19   force used in making an arrest was unreasonable is a

20   question to be determined by you, in light of all the

21   evidence received in the case.

22       You must determine the degree of force that a

23   reasonable and prudent police officer would have applied in

24   effecting the arrest, under the circumstances shown from the

25   evidence received in this case.

1      In determining whether any of the defendant police

2  officers used excessive force, you may consider, one, the

3  extent of the injury suffered; two, the need for the

4  application of force; three, the relationship between the

5  need and the amount of force used; four, the threat

6  reasonably perceived by the individual officer; and, five,

7  any efforts made to temper the severity of a forceful

8  response.

9      Injuries which result from, for example, an officer's

10  use of force to overcome resistance to arrest do not involve

11  constitutionally protected interests.  An officer's use of

12  excessive force does not give constitutional protection

13  against injuries that would have occurred, absent the

14  excessive force.

15      The reasonableness of a particular use of force must

16  be judged from the perspective of a reasonable officer on

17  the scene, rather than with hindsight.

18      The nature of reasonableness must allow for the fact

19  that police officers are often forced to make split-second

20  judgments under circumstances that are tense, uncertain, and

21  rapidly evolving, about the amount of force that is

22  necessary in a particular situation.

23      This reasonableness inquiry is an objective one.  The

24  question is whether the defendant police officers' actions

25  are objectively reasonable, in light of the facts and

circumstances confronting them, without regard to their
underlying intent or motivation.

In this case, the defendant police officers did not
act in unison, and you must consider separately the actions
of each of them.  Thus, you may find liability by none of
them or all of them or any of them individually.

Now, municipal liability of Metropolitan Nashville
government.  Plaintiffs also claim that defendant
Metropolitan Government of Nashville and Davidson County,
Metro, a municipality, is liable to them for the denial of
Patrick Lee's constitutional rights.

Defendant Metro may be liable where you find that
Patrick Lee has been deprived of his constitutional rights
and that such deprivation was done pursuant to a
governmental custom, policy ordinance, regulation or
decision.

When a person is injured as the proximate result of a
government's policy, custom, regulation or decision made by
those officials whose statements or acts may fairly be said
to represent official policy, defendant Metro itself is
responsible for the injury that is caused.

Defendant Metro maybe liable to the plaintiffs here if
you find that the deprivation was done pursuant to a custom,
policy, ordinance, regulation or decision of defendant Metro
that was the proximate cause of the deprivation of Patrick

1    Lee's constitutional rights.  Whether a custom or policy

2    exists is a question of fact for you to determine.

3         Please refer to the earlier causation instruction for

4    a definition of "proximate cause."

5         Now, here are the elements of the failure to train

6    claim against Metro.

7         Plaintiffs claim that Patrick Lee was injured as a

8    result of defendant Metro Government's failure to properly

9    train it officers, and that this alleged failure can be

10   considered to be the official policy of defendant

11   Metropolitan Government.

12        Your verdict will be for the plaintiffs and against

13   defendant Metro only if you find that one or more defendant

14   police officers deprived Patrick Lee of a constitutional

15   right by use of excessive force and if you find the

16   following.

17        First, that defendant Metro's training program was

18   inadequate to train its officers to carry out their duties;

19   second, that the need for more or different training is so

20   obvious and the inadequacies so likely to result in the

21   violation of constitutional rights, that the policy-makers

22   of defendant Metro can reasonably be said to have been

23   deliberately indifferent to the need for such training; and,

24   third, that the failure of defendant Metropolitan Government

25   to properly train was a cause of injury to Patrick Lee.

1      Plaintiffs cannot establish liability against

2   defendant Metro simply by showing that an injury or accident

3   could have been avoided if an officer had better or more

4   training sufficient to equip him to avoid the particular

5   injury-causing conduct.

6      Such a claim could be made about almost any encounter

7   resulting in injury.  The question is whether the training

8   program at issue is adequate to enable officers to respond

9   properly to the usual and recurring situations with which

10  they must deal.

11     Adequately trained officers occasionally make

12  mistakes.  The fact that they do says little about the

13  training program or the legal basis for holding the City

14  liable.

15     Deliberate indifference to the rights of others is the

16  conscious or reckless disregard of the consequences of one's

17  act or omissions.  Deliberate indifference requires more

18  than negligence or ordinary lack of due care.

19     If you find for the plaintiffs, Bud Lee and Cindy

20  Lundman as next friend and natural parents of Patrick Lee,

21  deceased, you must determine the plaintiffs' damages.

22     The plaintiffs have the burden of proving damages by a

23  preponderance of the evidence.  Damages means the amount of

24  money that will reasonably and fairly compensate the

25  plaintiffs, Bud Lee and Cindy Lundman, as next friend and as

1   natural parents of Patrick Lee, deceased, for the

2   deprivation of civil rights proximately caused by the

3   defendant police officers.

4       Damages may not be based on speculation or sympathy.

5   They must be based on the evidence presented at trial and

6   only on that evidence.

7       You should consider the following element of damage to

8   the extent you find them proved by a preponderance of the

9   evidence and no others.

10      One, the pecuniary value of Patrick Lee's life; two,

11  the reasonable cost of Patrick Lee's medical care and

12  hospitalization; three, Patrick Lee's physical or emotional

13  pain and mental anguish; and four, punitive damages, if any.

14      If you find for the plaintiffs, but you find that the

15  plaintiffs have failed to prove actual damages, you shall

16  return an award of nominal damages, not to exceed one

17  dollar.  The mere fact a constitutional deprivation has been

18  shown to have occurred is an injury to the person entitled

19  to enjoy that right, even when actual damages do not flow

20  from the deprivation.

21      In determining the pecuniary value of the life of

22  Patrick Lee, you should take into consideration the

23  following factors.

24      One, the age of Patrick Lee; two, the condition of

25  health of Patrick Lee; three, the life expectancy of Patrick

1    Lee; four, the strength and capacity of Patrick Lee for work

2    and for earning money through skill in any art, trade,

3    profession, occupation or business; five, the personal

4    habits of Patrick Lee as to sobriety and industry; and, six,

5    the reasonable value of the loss of consortium suffered by

6    the parents of the deceased, Bud Lee and Cindy Lundman.

7        "Consortium" is a legal term, consisting of several

8    elements.  It includes tangible services provided by a

9    family member, as well as intangible benefits each family

10   member receives from the continued existence of other family

11   members.

12       Such tangible benefits include love, affection,

13   attention, care, protection, companionship and cooperation

14   that the parents would reasonably be certain to have

15   received during the life of the deceased.

16       In determining whether to award damages for the loss

17   of consortium for the death of a child, you should consider

18   the age of the deceased child and the parent closeness of

19   the relationship, dependence, and any other factors that

20   reflect upon the relationship between the deceased and the

21   parent.

22       In weighing these factors, you should consider the

23   fact that expectancy of life is, at most, a probability

24   based upon experience and statisticians.  You should be

25   mindful of the possibility that the earnings of an

individual are not always uniform or over a period of time.

You should consider not only the most optimistic expectations of the future, but also the most pessimistic, and all the uncertainties between the extremes.

Finally, when determining the amount of damages based upon life expectancy and earning capacity, you should deduct the present cash value of the deceased's living expenses, had he lived.

These living expenses are those that, under the deceased's standard of living, would have been reasonably necessary to keep the deceased in such a condition of health and well-being as to maintain the capacity to earn money.

In addition to the damages mentioned in other instructions, the law permits the jury, under certain circumstances, to award the injured person punitive damages in order to punish a defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find in favor of the plaintiffs and against a defendant police officer, then in addition to any other damages to which you find the plaintiff entitled, you may, but are not required, to award plaintiffs an additional amount as punitive damages, if you find it is appropriate to punish a defendant police officer or deter defendant police officers and others from like conduct in the future.

1     Whether to award plaintiffs punitive damages is a

2   matter within your sound discretion.  You may assess

3   punitive damages against an individual police officer

4   defendant for a fourth amendment violation only if the

5   plaintiffs prove, by a preponderance of the evidence, that

6   the officers' conduct involved evil motive or intent or was

7   reckless or callously indifferent to Patrick Lee's

8   constitutional rights.

9     Punitive damages may not be assessed against the

10  Metropolitan Government.

11    The law forbids you to determine any issue in this

12  case by chance.  Thus, if you decide that a party is

13  entitled to recover, you must not arrive at the amount of

14  damages to be awarded by agreeing in advance to take each

15  juror's independent estimate of the amount to be awarded to

16  total those amounts, to divide the total by the number of

17  jurors, and make that resulting average the amount you

18  award.  That's called a quotient verdict, and it's not

19  permitted.

20    The Court has given you instructions embodying various

21  rules of law to help guide you to a just and lawful verdict.

22  Whether some of these instructions will apply will depend

23  upon what you find to be the fact.  That I have instructed

24  you on various subjects in this case, including that of

25  damages, must not be taken as indicating an opinion of the

1  Court on what you should find the facts to be or on which

2  party is entitled to your verdict.

3      The attitude and conduct of jurors at the beginning of

4  their deliberations is very important.  It is rarely

5  productive or good for a juror, upon entering the jury room,

6  to make an emphatic expression of his or her opinion on the

7  case, or to announce a determination to stand for a certain

8  verdict.

9      When a juror does that, his or her sense of pride may

10  be aroused, and that person may hesitate to recede from an

11  announced position if shown that it is wrong.  Remember, you

12  are not partisans or advocates.  You are judges of the

13  facts.

14      Sympathy or prejudice must not enter into your

15  deliberation as jurors, no matter what your sympathy or

16  prejudice may lead you to think.  Sympathy or prejudice has

17  no place in the trial of a lawsuit, or in the making up of

18  your minds as to what your verdict shall be.  Do not permit

19  any such emotional considerations to enter into your

20  deliberations at all.

21      The law demands of you a just verdict unaffected by

22  anything, except the evidence, your common sense, and the

23  law as the court gives it to you.

24      Some of you, most of you, have taken notes during the

25  trial.  Once you retire to the jury room, you may refer to

1    your notes, but only to refresh your own memory.

2         Your notes are not evidence.  You may not read your

3    notes of your fellow jurors or otherwise inform them of what

4    you have written.  The notes may contain errors, or they may

5    be misunderstood or taken out of context.

6         The notes may only pertain to part of the testimony,

7    and may not be an exact account of what was said by a

8    witness.

9         You are free to discuss the testimony of the witnesses

10   with your fellow jurors, but each juror must rely on his or

11   her own memory as to what the witness did or did not say.

12        Upon retiring to the jury room, you will select one of

13   your number to act as your foreperson.  The foreperson will

14   preside over your deliberations and will be your

15   spokesperson here in court.

16        We have prepared a verdict form for your convenience,

17   which I will go over in just a minute.

18        You will take this form to the jury room, and when you

19   have reached unanimous agreement as to your verdict, you

20   will have the foreperson fill in the date and sign the form

21   which sets forth the verdict upon which you unanimously

22   agree.  You will then return with your verdict to the

23   courtroom.

24        It is proper to add the caution that nothing said in

25   these instructions and nothing in any form of verdict

prepared for your convenience is meant to suggest or convey

in any way or manner any intimation as to what verdict I

think you should find.  What the verdict shall be is your

sole and exclusive duty and responsibility.

The verdict must represent the considered judgment of

each juror.  In order to return a verdict, it is necessary

that each juror agree.  Your verdict must be unanimous.

It is your duty as jurors to consult with one another

and to deliberate, with a view to reaching an agreement, if

you can do so without violence to individual judgment.

You must each decide the case for yourself, but only

after an impartial consideration of the evidence in the case

with your fellow jurors.

In the course of your deliberations, do not hesitate

to reexamine your own views and change your opinion, if

convinced it is in error.  But do not surrender your honest

conviction as to the weight or effect of evidence solely

because of the opinion of your fellow jurors or for the mere

purpose of returning a verdict.

Remember at all times that you are not partisans.  You

are judges, judges of the facts.  Your sole interest is to

seek the truth from the evidence in the case.

If it becomes necessary during your deliberations to

communicate with the Court, you may send a note by the court

security officer, signed by your foreperson or by one or

1  more members of the jury.

2      No member of the jury should even attempt to

3  communicate with the Court by any means, other than signed

4  writing.  And the Court will never communicate with any

5  member of the jury on any subject touching the merits of the

6  case, except in writing or orally here in open court.

7      Bear in mind, also, that you are never to reveal to

8  any person, not even to the Court, how you stand numerically

9  or otherwise on the questions before you until after you

10  have reached a unanimous verdict.

11      Now, the verdict form will walk you right through the

12  questions you must answer.

13      With regard to each of the three officers, you are

14  asked these questions.  "Did, for instance, defendant

15  Jonathan Mays, violate Patrick Lee's fourth amendment

16  constitutional right to be free from the use of excessive

17  force?  Yes or no."

18      If you answer no to that question, you move on to the

19  next officer.  If you answer yes, then you answer this

20  series of questions.

21      Please state the amount of compensatory or nominal

22  damages you assess against Defendant Mays; then, do you

23  award punitive damages against Defendant Mays; then, if so,

24  state the amount of punitive damages; and, then, do you find

25  that Officer Mays use of excessive force on Patrick Lee was

1  closely related to or was caused by a custom, policy or

2  practice of the Metropolitan Government in failing to train

3  its officers.

4      So that's the series of questions you answer for each

5  of the three officer defendants.

6      And then with regard to the Metro Government, you must

7  find the use of excessive force by one or more of the

8  officers.  If you find that none of the officers used

9  excessive force, then Metropolitan Government is not liable

10  on the failure to train form -- claim.  But if you find at

11  least one officer liable on the excessive force claim, then

12  you will answer the last question, question 4, which deals

13  with Metro Government, and you are to state the amount of

14  compensatory or nominal damages that you assess against

15  Metro on the failure to train claim.

16      So that's the verdict form.  You will have that back

17  in the jury room with you with all of the evidence.

18      I would like the lawyers to approach the bench for one

19  minute.

20              *(Bench conference.)

21          THE COURT:  I don't have -- *it escaped us, but

22  we haven't given them an instruction on expert witnesses,

23  which given -- given the plethora of expert witnesses, I

24  sort of think we need to do.  And if you all don't think --

25  if you all agree we don't need one, I won't give one, but I

1    think it might be helpful to them.

2        What do you think?

3            MR. BEDNARZ, SR.:  I think so, Your Honor.

4            MS. OLIVER:  Your Honor, may I bring one thing

5    up?

6            THE COURT:  Yes, please.

7            MS. OLIVER:  Certain things were left out of Your

8    Honor's oral reading of the version I had.

9            THE COURT:  I realized when I got -- I found the

10   battery instruction in here that I didn't have -- I was

11   reading from the one that still had battery in it.  What did

12   I miss?

13           MS. OLIVER:  With regard to our issues --

14           THE COURT:  What page?

15           MS. OLIVER:  Page 21.  I don't have a draft in

16   front of me.

17           THE COURT:  Yes.  Okay.

18           MS. OLIVER:  Starting with, "That a particular

19   officer."

20           THE COURT:  Yes.  Is that the only thing?

21   Anybody catch anything.

22           MR. BROWN:  I did, Judge.  The part I circled

23   there on excessive force, page 17.  This was something that

24   Your Honor had added in your writing or somebody's writing.

25   And I believe Your Honor just said that the extent of

```
 1    injuries suffered -- anything else?

 2              THE COURT:  I am so sorry.

 3              MR. BROWN:  That's okay.  Then this whole

 4    paragraph here, which is --

 5              THE COURT:  18?  What page?

 6              MR. BROWN:  Page 18.

 7              THE COURT:  18.  I pared down the part --

 8              MR. BROWN:  Yes, ma'am, that whole paragraph.

 9              THE COURT:  All right, 17, 18 and 21, all right.

10    Anything else?  Anything on Patrick Lee?

11         All right.  Let me find the -- I think we have got a

12    pattern in the Sixth Circuit Criminal -- let's see.

13         Here's the pattern, Sixth Circuit.  You have heard

14    testimony of several expert witnesses.  An expert witness

15    has special knowledge or experience that allows the witness

16    to give an opinion.

17         You do not have to accept an expert's opinion.  In

18    deciding how much weight to give it, you should consider the

19    witness's qualifications and how he reached his conclusion.

20    Remember that you alone decide how much of a witness's

21    testimony to believe and how much weight it deserves.

22         Is that okay?

23              MR. BEDNARZ, SR.:  Yes, ma'am.

24              MS. OLIVER:  (Moves head up and down.)

25              MS. BUSSELL:  (Moves head up and down.)
```

 1            THE COURT:  Should we type this up and send it
 2    back or have them rely on their memories?
 3            MS. OLIVER:  I'm fine with it.
 4            MR. BEDNARZ, SR.:  I think it should go with
 5    them.
 6            THE COURT:  All right.
 7            MR. BROWN:  May I inquire which version the jury
 8    has of this?
 9            THE COURT:  They have the correct one.  They have
10    the correct one because I had her -- I will confirm that.
11            MR. BROWN:  Okay.  Thank you.
12            THE COURT:  Okay.  I have to say I have never
13    done that before.  I apologize to you.
14            (Bench conference concludes.)
15            THE COURT:  All right.  Members of the jury, the
16    Court has made a mistake, and I want to make sure that -- I
17    need to read to you some paragraphs which I left out.  I
18    want to make sure they are in your copy.
19        Would you turn to page 17?  And the listing of the
20    elements there, does yours say, "To the extent of the
21    injuries suffered at the hand of the particular defendant
22    police officer"?
23            THE JURORS:  (Move heads up and down.)
24            THE COURT:  Does it?
25            THE JURORS:  (Move heads up and down.)

1          THE COURT:  Great.  Okay.  Does somebody not --

2     you have it?  Everyone got that?  All right.

3          All right.  I'm going to read you two or three

4     sections here that were to be in here.  You have the right

5     draft and you probably noticed, if you were following, that

6     I didn't read a few parts of this.  And that's because I was

7     working from the penultimate draft rather than the very last

8     draft.

9          So on page 17, the first element, the extent of the

10    injuries suffered at the hand of the particular defendant

11    police officer.

12         Turn to page 18.  The paragraph that starts -- it's

13    the second-to-last paragraph.  I'm going to read it to you.

14    "Liability on the part of one or more of the police officers

15    in this case, if any, must be based on a misuse of power and

16    not on the accidental effects of otherwise lawful conduct.

17    A police officer is not required to choose the least

18    intrusive means of applying force in making an arrest."

19         Then if you will turn to page 21.  There is an

20    additional section I need to read to you.  "That a

21    particular officer may be unsatisfactorily trained will not

22    alone suffice to fasten liability on the City, because a

23    particular officer's shortcomings may have resulted from

24    factors other than a faulty training program.  For example,

25    an otherwise sound training program has occasionally been

negligently administered and liability against the
Metropolitan Government under Section 1983 will not lie
under such circumstances."

        And then, members of the jury, we realized that we did
not give you an instruction on expert witnesses.  I'm going
to read it to you, and I will be sending back copies of this
instruction.

        "You have heard the testimony of many expert witnesses
in this case.  An expert witness has special knowledge or
experience that allows the witness to give an opinion.  You
do not have to accept an expert's opinion.

        In deciding how much weight to give it, you should
consider the witness' qualifications and how he reached his
conclusions.  Remember that you alone decide how much of a
witness' testimony to believe and how much weight it
deserves."

        And for the record, I'm going to state that the jury
has the correct version of instructions.  They had the
correction version of instructions before them as the Court
was reading and made a few omissions.

        At this time, members of the jury, you may take back
with you everything you have with you, your notes, whatever
exhibit notebooks you have, the instructions.

        We will send back the verdict form.  We will send back
all of the evidence.  You will have in the jury room a DVD

 1  player, some way for you to look at any of these various

 2  videotapes that you may wish to look at.

 3      And at this time, you are excused to begin your

 4  deliberations.

 5      Some of you didn't get the last binder?  Oh, okay.

 6          (Jury exits at 9:52 A.M.)

 7          THE COURT:  Again, my apologies.  I wish someone

 8  had given me the high sign when I made the first omission,

 9  but I know you don't like to interrupt judges giving

10  instructions.  But, okay, anyway, we'll get this typed up.

11  I'll give you copies, and we'll send several copies back to

12  the jury room.

13      Anybody else want to say anything else for purposes of

14  the record?

15      All right.  We're in recess.

16          MR. BEDNARZ, SR.:  Judge, could I ask a question,

17  please?

18          THE COURT:  Yes.

19          MR. BEDNARZ, SR.:  What's Your Honor's policy on

20  whether or not all of the lawyers have to hang around or be

21  within a certain --

22          THE COURT:  I want you within calling distance.

23  The -- depends on the case, but I want you to be able get

24  here within 10, 15 minutes, max, if we have a question.  So

25  just make sure that Ms. Briggs-Jones can reach you.

1          MR. BEDNARZ, SR.:  Yes.  Okay.  Very good.  Thank

2     you, Your Honor.

3               (Reassembled at 7:30 p.m.)

4          THE COURT:  They have reached a verdict.  The

5     pizzas aren't even here yet, but they have reached a

6     verdict, so bring them in, please.

7          You apparently had a quicker source than we did.  I

8     hope you got to eat your food.

9               (Jury enters.)

10         THE COURT:  I'm sorry you had to starve to death.

11    The pizza is still apparently on its way.

12         You have reached a verdict?

13              THE FOREPERSON:  Yes.

14              THE COURT:  Would you hand the verdict form to

15    the court security officer, Mr. Rondo?  Thank you.  Thank

16    you.

17         All right.  With regard to question one, "Did

18    Defendant Officer Jonathan Mays violate Patrick Lee's fourth

19    amendment constitutional right to be free from excessive

20    force?"  Answer is no.

21         With regard to Officer Jamie Scruggs, the answer to

22    question 2 is no excessive force.

23         The answer to number 3, Jason Cregan, the answer is no

24    to excessive force.

25         And, therefore, they did not answer the question, the

1   last question.

2          (POLLING OF JURY CONTAINED IN SEPARATE SEALED VOLUME

3   18.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25